WALTER CRAIG ET AL *v.* RICHARD HAWES ET AL.

**Lands—Execution—Sale—Fraud and Collusion—Trusts.**

Evidence of an inadequacy of price, and the interest of a purchaser, as an heir, and acting trustee for several other heirs, held sufficient to vacate the sale of a large tract of land, appraised at $3,200, and sold for an execution of $144.

**Same—Bona Fide Purchasers.**

The purchasers of a portion of said land, from the execution purchaser, for a valuable consideration, without notice of the equity of co-heirs, cannot be divested of their holdings, in a subsequent suit by such heirs.

**Same—Right of Co-heirs to Restitution.**

Though the heirs are estopped from such recovery, they can by proper proceeding force restitution of the amount obtained by the sale of the lands to such bona fide purchasers.

APPEAL FROM GALLATIN CIRCUIT COURT.

May 27, 1868.

OPINION OF THE COURT BY JUDGE HARDIN:

A suit in chancery was for many years pending in the Gallatin circuit court in the names of Richard Hawes and his wife and other heirs and claimants of the estate of George Nicholas, deceased, against Louis Sanders and others, in which partition was sought of a portion of a tract of about 17,000 acres of land owned by George Nicholas at his death and known as the Merriwether South Survey; but which with other estate of said decedent, having been subjected to sale and purchased by Wilson C. Nicholas, had been subsequently conveyed by him and Samuel Smith to James Morrison, executor of George Nicholas, upon certain trusts for the benefit of the heirs of the latter, and was afterwards vested in said Richard Hawes and S. S. Nicholas upon trusts for the benefit of said heirs of George Nicholas by the deed of Henry Clay, executor of Morrison, made in 1834 in pursuance of the award of arbitrators to settle a controversy between said heirs and Morrison's Exor. in the Jefferson circuit court.

· During the pendency of said suit and prior to the year 1837, Louis Sanders who had intermarried with Ann Nicholas, a daughter and heir of George Nicholas, deceased, appears to have resided on the land. Besides the interest of Mrs. Sanders as one of said heirs, in the land she appears to have acquired certain other interests from her brother, S. S. Nicholas, and others. Louis Sanders being thus upon the land and interested in the right of his wife, seems to have acted also as the agent of his wife's co-heirs, either with or without authority from them in prosecuting suits against alleged trespassers and squatters on the land. And among other actions so instituted suits against H. B. Partlaw and others, and William Wood and others, which resulted in judgments for costs against the heirs of Nicholas on which executions were issued as follows:

1. *Fifa* in favor of William Wood against the estate of George N. Sanders *and other heirs and legal representatives of George Nicholas, deceased for* ..............:..... $9.91

2. *Fifa* in favor of H. B. Partlaw and others against the estate of Roberts C. Nicholas and others who are named as the *"surviving children and heirs of George Nicholas, deceased for* :..................................$111.82

3. *Fifa* from court of appeals in favor of the same against the same for $13.74 and 45½ cents ..........$14 19½

These actions appear to have been levied by the sheriff on the 13th day of May, 1839, on a tract of land, imperfectly described, in the original levy as "joining Walton Craig and William O'Neal, belonging to the heirs of Nicholas, near Ghent." ' The sheriff annexing to his return the following statement: "Given up by Louis Sanders, agent, Levi Abbett, S. C. C." This tract appears to have contained near 800 acres and to have been part of the 17,-000 acre survey, and was sold by the sheriff and purchased by John C. Lindsey for $144.21, the estimated amount of the three executions, the land having been first appraised by Walter Craig and Benjamin Craig at $4.00 per acre, and the sheriff afterwards, by his deed dated July 6th, 1839, and more specifically describing the land sold, conveyed it to Lindsay, from whom it is alleged by the appellants, that George N. Sanders, a son of said Louis and Ann Sanders and thus an heir of the latter, who had died, subsequently purchased it.

The land or most of it having passed into the possession, of

sub-purchasers of George N. Sanders,—among them, the parties Walter Craig and William O'Neal, to whom said G. N. Sanders, and L. Sanders, Jr., executed a deed, dated July 8th, 1839, for about 293 acres at the price of $2,934.87½—Richard Hawes and wife and others of the original complainants in said suit for partition, which was still pending, in October, 1846, filed an amended bill therein, seeking to vacate the sale and conveyance to Lindsay and eject the tenants in possession for alleged fraud and collusion on the part of Louis Sanders, Sr., George N. Sanders and Lindsay, together with the inadequacy of the price paid by Lindsay and irregularity and illegality of the levy and sale.

The litigation thus initiated, between the parties to said amended bill, was finally decided by the circuit court in March, 1865, when it was adjudged that "the deed to Lindsay be vacated and held for naught and that the parties, defendants in possession surrender up to the plaintiffs the tract of land in controversy upon the payment by the said plaintiffs of the purchase price paid by John C. Lindsay, viz: One hundred and forty-four dollars and twenty-one cents ($144.21), without interest, and that the plaintiffs recover of defendants their costs." From this judgment and the further order awarding the plaintiffs a writ of possession, Lindsay, Craig and others have prosecuted this appeal; and Hawes and wife and others seek a reversal on their cross-appeal for the refusal of the circuit court to hold the defendants liable for rents of the land.

As conceded in the argument, the pendency of the original suit for partition, cannot affect the validity of the sale except in so far as it may show the relations which Louis Sanders and George N. Sanders occupied towards the appellees at the time the appellants purchased the land; the pleadings not being such as to place the appellants in the attitude of *pendente lite* purchasers.

After a careful examination and we think, mature consideration of the various points on which, it is insisted by the counsel for the appellants, that the sale made by the sheriff was void for irregularity, as decided by the circuit court, we do not concur in that conclusion of the court. But without elaborating this opinion by a discussion in detail of the many questions raised as to the regularity of the sale, none of which have been overtasked, our conclusion is that the sale was not void as adjudged by the court below.

Whether it should not have been set aside partially or *in toto* for the inadequacy of the price at which Lindsay purchased and fraud in the procurement, presents a graver, and to us a more perplexing question.

Although the charge of a fraudulent collusion between George N. Sanders, the sheriff, and Lindsay is denied by Lindsay, and we see no sufficient cause to infer that the sheriff acted in bad faith, there are facts connected with the claim of George N. Sanders under the purchase, as derived through Lindsay, which in connection with the erroneous succession at which the sheriff's sale was made, are sufficient, in our opinion, to vacate the sale in a court of equity, at least so far as the rights of Sanders are concerned. Although Lindsay professes to have sold the land after his purchase to Sanders for a fair price, the price he received, if anything more than that at which he made the purchase, is not disclosed. And although George N. Sanders and Louis Sanders, Jr., by their deed made July 8th, 1839, but two days after the conveyance of the sheriff to Lindsay, sold 293 acres of the land to Craig and O'Neal for $2,934.87½, it does not appear that G. N. Sanders acquired the title or held any written evidence of a purchase from Lindsay, till Lindsay executed a deed to him dated the 19th day of December, 1840, and for the expressed consideration of one dollar; and how Louis Sanders, Jr., acquired a joint interest in the land with George N. Sanders does not appear. These facts and circumstances, considered in connection with the further facts that the 800 acres of land which Lindsay purchased at $144.21 was worth four dollars an acre, and that both George N. and Louis Sanders, Jr., were at the time of the sale interested as part owners of the land with the other heirs and devisees of George Nicholas, deceased, constrain us to approve and affirm the judgment of the court below except in so far it divests the rights of parties, who may stand in the position of *bona fide* purchasers for a valuable consideration, without notice of the equity of the appellees as against Lindsay and George N. Sanders. But the appellant Craig and the representatives and heirs of O'Neal seem to us to occupy that position. The price paid by them and for which they accepted the deed of G. N. and Louis Sanders, Jr., appears to have been full and adequate, and it is neither alleged nor proved that they had notice of the equity of the appellees; and we are of the opinion that said Craig and those

who hold under the said title of O'Neal are entitled to be protected in their title under the deed from G. N. and Louis Sanders, Jr., but the other sub-purchasers or tenants under them have not shown themselves entitled to like protection.

And while we adjudge that the appellants cannot for the reasons stated, recover the land sold to Craig and O'Neal, they are not in our opinion without remedy as against the Sanders to recover for money for which they sold the land.

Wherefore, the judgment, so far as it affects the rights of said Craig and O'Neal's heirs and representatives or parties claiming under O'Neal is reversed with directions to dismiss the action as to them, but the residue of the judgment is affirmed on both the original and cross appeals.

*Winslow,* for appellants.

*James,* for appellees.